**MILLER JOHNSON LAW**
Jon B. Miller, Esq. (SBN 099070)
jonbmiller@sbcglobal.net
Scott A. Johnson, Esq. (SBN 099024)
scottajohnson55@msn.com
427 "C" Street, Suite 410
San Diego, CA   92101
T:  (619) 232-0086 / F:  232-0089

**SETH M REISS, AAL, ALLLC**
Seth M. Reiss, Esq. (HI Bar No. 2774-0)*
seth.reiss@lex-ip.com
3770 Lurline Drive
Honolulu, Hawaii 96816
T:  (808) 521-7080 / F:  (808) 675-5805
*(Admitted Pro Hac Vice)

Attorneys for Plaintiff
KIVA HEALTH BRANDS LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIVA HEALTH BRANDS LLC, | ) **CIVIL NO. 3:18-cv-02249-BAS-MDD** |
| Plaintiff, | ) |
| v. | ) **PLAINTIFF KIVA HEALTH BRAND'S** ) **MEMORANDUM OF POINTS AND** |
| KIVA BRANDS INC.; and | ) **AUTHORITIES IN SUPPORT OF** ) **MOTIONS: (1) FOR PRELIMINARY** |
| DOES 1 through 20, inclusive, | ) **INJUNCTION AGAINST DEFENDANT** |
| Defendants. | ) **KIVA BRANDS INC.; AND** ) **(2) TO DISMISS SECOND AND THIRD** ) **CLAIMS FOR RELIEF IN** |
| KIVA BRANDS INC. | ) **DEFENDANT'S COUNTERCLAIM** |
| Counterclaimant, | ) Date:        June 3, 2019 |
| v. | ) Judge:      Hon. Cynthia Bashant |
| KIVA HEALTH BRANDS LLC, | ) Courtroom: 4-B |
| Counter-Defendant. | ) NO ORAL ARGUMENT UNLESS ) REQUESTED BY THE COURT |
| | ) JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION..........................................................................    1

II.   STATEMENT OF RELEVANT FACTS .....................................    1

    A.    Plaintiff Kiva Health Brands LLC .......................................    1

    B.    Defendant Kiva Brands Inc..................................................    3

    C.    Confusion ..............................................................................    4

III.  MOTION FOR PRELIMINARY INJUNCTION.........................    6

    A.    Legal Standard for Preliminary Injunctions.........................    6

    B.    Plaintiff Kiva Health Is Likely to Succeed on
        The Merits .............................................................................    6

        1. Plaintiff Is The Owner Of The KIVA Trademark ..............    7

        2. A Likelihood Of Confusion Has Been
           Established ..........................................................................    7

        3.  Defendant Will Not Prevail On Its Expected
           Affirmative Defenses.........................................................    10

           (a)  Defendant Cannot Successfully Raise a
               "Senior User" Defense................................................    10

           (b)  Kiva Brands Cannot Successful Raise a
               Laches Defense............................................................    14

    C.    Kiva Health Has Suffered, and Will Continue to
        Suffer, Irreparable Harm .......................................................    15

    D.    A Balancing of Equities Tips Sharply in
        Plaintiff's Favor....................................................................    16

    E.    An Injunction Against Kiva Confections' Use
        Of The KIVA Mark Is In The Public Interest....................    17

    F.    Conclusion ............................................................................    18

IV.   MOTION TO DISMISS SECOND AND
    THIRD CLAIMS FOR RELIEF IN THE
    FIRST AMENDED COUNTERCLAIM .....................................    18

## **TABLE OF CONTENTS**

**PAGE**

A.   Introduction ........................................................................... 18

B.   Legal Standards Applicable to A Motion to Dismiss ......... 19

C.   Argument ............................................................................... 20

D.   Conclusion ............................................................................. 22

# TABLE OF AUTHORITIES

## CASES

**PAGES**

CreAgri, Inc. v. USANA Health Scis., Inc.,
   474 F.3d 626, 634 (9th Cir. 2007)................................... 13, 20

Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,
   448 F.3d 1118, 1124 (9th Cir. 2006).......................... 6, 11, 12, 20

Doeblers' Pa. Hybrids, Inc. v. Doebler,
   442 F.3d 812, 822 (3d Cir. 2006)................................. 12

Employers Insurance v. Musick, Peeler & Garrett,
   871 F.Supp. 381, 385 (S.D. Cal. 1994)........................ 19

Glow Indus. v. Lopez,
   273 F. Supp. 2d 1095, 1107 (C.D.Cal. 2003) ............. 11

GoClear LLC v. Target Corporation,
   2009 WL 160624 (USDC N.D. Cal. 2009)................... 13, 20

Gorenstein Enters., Inc. v. Quality Care-USA, Inc.,
   874 F.2d 431, 435 (7th Cir. 1989)............................... 11

Grupo Gigante SA De CV v. Dallo & Co., Inc.
   391 F.3d 1088, 1093 (9th Cir. 2004)........................... 13, 20

Herb Reed Enterprises, LLC v. Florida Entertainment
Management, Inc.,
   736 F.3d 1239, 1250 (9th Cir. 2013).......................... 15

In Re JJ206, LLC, DBA Juju Joints,
   120 U.S.P.Q.2d 1568, 1569 (T.T.A.B. Oct. 27, 2016)............... 13, 20, 21

In Re Morgan Brown,
   119 U.S.P.Q.2d 1350 (T.T.A.B. July 14, 2016)........................ 13, 21

In re Pepcom Indus., Inc.,
   192 USPQ 400, 401 (TTAB 1976); ........................... 20

In re PharmaCann LLC,
   123 U.S.P.Q.2d 1122, 1128 (T.T.A.B. 2017) ............. 21

In re Silicon Graphics, Inc. Securities Litigation,
   970 F.Supp. 746, 751 (N.D. Cal. 1997) ...................... 19

Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.
   559 F.3d 985, 990 n.2 (9th Cir. 2009)......................... 15

**CASES**

**PAGES**

Lorillard Tobacco co. v. California Imports, LLC,
    886 F.Supp.2d 529 (E.D. Va. 2012)............................................. 16

Marcus v. ABC Signature Studios, Inc.,
    279 F.Supp.3d 1056, 1061  (C.D.Cal. 2017) .............................. 19

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
    571 F.3d 873, 877 (9th Cir. 2009)............................................... 6

Marketquest Grp., Inc. v. BIC Corp.,
    316 F.Supp.3d 1234, 1270 (S.D.Cal. 2018)................................ 8

Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,
    638 F.3d 1137, 1144 (9th Cir. 2011)........................................... 6

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merk
Consumer Pharmaceuticals Co.,
    290 F.3d 578 (3rd Cir. 2002) ...................................................... 17

Nova Wines, Inc. v. Adler Fels Winery, LLC,
    467 F.Supp.2d 965, 979 (N.D.Cal. 2006) ................................... 8

One Indus., LLC v. Jim O'Neal Distrib.,
    578 F.3d 1154, 1162 (9th Cir. 2009)........................................... 8

Pinkette Clothing, Inc. v. Cosmetic Warriors Limited,
    894 F.3d 1015, 1025 (9th Cir. 2018)........................................... 15

Rearden LLC v. Rearden Commerce, Inc.,
    683 F.3d 1190, 1210 (9th Cir. 2012)........................................... 9

Rolley, Inc. v. Younghusband,
    204 F.2d 209, 211 (9th Cir. 1953)............................................... 7

S. California Darts Ass'n v. Zaffina,
    762 F.3d 921, 931 (9th Cir. 2014)............................................... 13, 20

Stone Creek, Inc. v. Omnia Italian Design, Inc.,
    875 F.3d 426, 432  (9th Cir. 2017)............................................... 8

SunAmerica Corp. vs. Sun Life Assurance Co. of Can.,
    77 F.3d 1225 (11th Cir. 1996)..................................................... 15

Tandy Corp. v. Malone & Hyde, Inc.,
    769 F.2d 362, 366 (6th Cir. 1985)............................................... 15

Thane Intern., Inc. v. Trek Bicycle Corp.,
    305 F.3d 894, 902 (9th Cir. 2002)............................................... 9

## CASES

**PAGES**

TMT North America, Inc. v. Magic Touch GmbH,
    124 F.3d 876, 884 (7th Cir. 1997)................................................. 11

United Safeguard Distribs. Ass'n v. Safeguard Bus. Sys.,
    145 F.Supp.3d 932, 942 (C.D.Cal. 2015) ................................... 19

Weinberger v. Romero-Barcelo,
    456 U.S. 305, 312, 102 S.Ct. 1798 (1982).................................. 17

Winter v. Natural Resources Defense Council, Inc.,
    555 U.S. 7, 129 S. Ct. 365 (2018).............................................. 6

## STATUTES

**PAGES**

15 U.S.C. § 1051 ............................................................... 12, 20

15 U.S.C. § 1057 ............................................................... 7, 10, 11

15 U.S.C. § 1060 ............................................................... 11

15 U.S.C. § 1114(1) ......................................................... 7

21 U.S.C. §§ 812(c)(10) ................................................... 13, 21

## AUTHORITIES

**PAGES**

2 McCarthy on Trademarks and Unfair Competition, § 16.1 ........... 13, 20

3 McCarthy on Trademarks and Unfair Competition, § 19:93 ......... 7, 8

4 McCarthy on Trademarks and Unfair Competition, § 26:5 ........... 12

5 McCarthy on Trademarks and Unfair Competition, § 31.19 ......... 14, 15, 16, 17

Trademark Laundering, Useless Patents, and
Other IP Challenges for the Marijuana Industry,
    73 Wash & Lee L. Rev. 217, 219 (Winter,2016)...................... 13, 20

Trademark Manual of Examining Procedure, § 907 (2018).......... 13, 20, 21

USPTO Trademark ID Manual........................................... 7

## I.    INTRODUCTION

In this trademark infringement case two companies are using the same name and mark, "KIVA," to promote and sell food products.  Plaintiff Kiva Health Brands LLC (hereinafter "Kiva Health"), registered the KIVA trademark with the U.S. Patent and Trademark Office, and has been using that mark in commerce since 2013, for its line of eco-friendly, unadulterated health food products and supplements, sold throughout the United States and around the world.  Defendant Kiva Brands Inc., which came into existence in 2014, uses the KIVA name to distribute and sell its "Kiva Confections" -- candies that have been infused with marijuana.

As would be expected, the two companies' use of an identical mark on food products has caused consumer confusion, and that confusion has been increasing as the two companies expand the volume and geographic reach of their sales.  Kiva Health developed its KIVA brand to be associated with food products that are healthy, fresh, pure and unadulterated, and Kiva Health's sales, reputation and goodwill have been seriously injured by the erroneous association with the illegal cannabis-infused food products sold as Kiva Confections.

The public is hearing and seeing one mark with two incompatible messages. Kiva Health owns the registered trademark for KIVA, and has the right to the exclusive use of the mark. The damage to Kiva Health's reputation and goodwill cannot be measured in monetary terms, and is irreparable.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Plaintiff Kiva Health Brands LLC

Plaintiff Kiva Health is a Nevada corporation, created on December 19, 2010, with its principal place of business in Honolulu, Hawaii.  Kiva Health is engaged in the distribution and sale of non-GMO foods and food supplements sourced from farmers who practice sustainable and eco-friendly farming methods. Kiva Health sources its food products globally, and sells its food products

1  throughout the United States and in many countries around the world. <u>See</u>

2  Declaration of Tchad Henderson, filed concurrently herewith, at paragraphs 2-3.

3       Kiva Health's principals conceived of, and first adopted, the KIVA name in

4  June of 2009, for a business selling high quality health food products. The

5  principals also registered "kivahealthbrands.com" as a domain name in 2009.

6  Henderson Declaration, at paragraph 4. In March of 2010, Megan Cummins was

7  hired to design a KIVA brand logo. The first food package with the KIVA logo

8  was designed by Cummins in April of 2010, and she posted images of the package

9  with the KIVA logo on her website in October of 2010. <u>Id.</u>, at paragraph 5.

10       In June of 2010, a KIVA-branded reusable food/grocery bag was designed

11  for Kiva Health. The first sales of those KIVA bags began in February 2011, on

12  Amazon.com. <u>Id.</u>, at paragraph 7.

13       Kiva Health has been selling healthy food products, including food

14  supplements, in lawful commerce under the KIVA brand since at least February of

15  2013. The first online sales via Amazon.com occurred on June 10, 2013, and

16  beginning on September 2, 2013, sales were made from Kiva Health's website,

17  "www.kivahealthfood.com." <u>Id.</u>, at paragraph 8.

18       Kiva Health has invested heavily in the promotion of its KIVA brand food

19  and food supplement products, spending approximately $245,000 in 2016,

20  $720,000 in 2017, and $1,360,000 in 2018, for advertising and other promotional

21  activities. Henderson Declaration, at paragraph 10. In 2016, Kiva Health sold

22  approximately 108,000 units of KIVA brand products; it sold 176,000 units of

23  KIVA brand products in 2017; and it sold 294,000 units in 2018. <u>Id.</u>, at paragraph

24  11. As a result of Kiva Health's extensive promotion and sales of high quality

25  KIVA branded food and food supplement products, the KIVA brand has accrued

26  substantial goodwill, and holds great value to Kiva Health. <u>Id.</u>, at paragraph 10.

27       Kiva Health holds U.S. Patent and Trademark Office ("USPTO") and

28  foreign trademark registrations for its KIVA mark. The earliest is USPTO

1   Registration No. 4,514,257, applied for on September 5, 2013, and issued on

2   April 15, 2014, for use of the KIVA mark on various classes of food products,

3   including International Class 30, which covers chocolate, cocoa and candies.

4   Kiva Health also owns USPTO Registration Nos. 4804607 and 5108487 for the

5   KIVA mark, issued September 1, 2015, and December 27, 2017, respectively, and

6   covering, inter alia, Class 30.  Henderson Declaration, Exhibits "A," "B" and "C";

7   Kiva Health's USPTO Registration Certificates are also attached as Exhibit "1" to

8   plaintiff's complaint.

9   B.      Defendant Kiva Brands Inc.

10   Defendant Kiva Brands Inc. is a Delaware corporation that was incorporated

11   on September 5, 2014, and sells marijuana-infused edibles under the name "Kiva

12   Confections."  See Henderson Declaration, at paragraphs 12, 14; Declaration of

13   Jon B. Miller, at paragraphs 3, 6, and Exhibits "G" and "K" thereto.  Despite the

14   fact that it first came into existence in 2014, Kiva Brands attempts to give the

15   impression that its use of the "KIVA" mark began in 2010.  In its amended

16   counterclaim (at paragraphs 23-24), Kiva Brands alleges that it "started as a

17   company named Indica," and that "[o]n November 23, 2010, KBI's founders

18   licensed the KIVA brand (including rights to the 'KIVA' name and mark) to

19   Indica," and that Indica began using the KIVA mark in its sales of cannabis-

20   containing products in December of 2010.  At his deposition in this litigation, one

21   of the alleged "founders," Scott Palmer, gave sworn testimony confirming that the

22   license agreement with Indica was signed on November 23, 2010.  See Miller

23   Declaration, at paragraph 8.

24   However, this claim of a predecessor's use of the mark in 2010 was

25   subsequently impeached by Palmer.  Kiva Brands' counsel recently gave notice

26   that Palmer had identified "certain changes" to his testimony which he "intends to

27   make in an errata to the final transcript once it is available for review."  Pursuant to

28   these changes, Palmer now intends to testify that the license agreement was not

1  signed on November 23, 2010, but was signed "around <u>October of 2018</u>, effective

2  November 23, 2010."  Miller Declaration, at paragraph 8, and Exhibit "L" thereto.

3  Accordingly, Kiva Brands' proffer of the backdated license agreement fails to

4  demonstrate that Indica had been licensed to use the KIVA mark in 2010, or at any

5  time before 2018, and undermines any claim to a legitimate chain of title by which

6  Kiva Brands acquired the right to use the KIVA mark.

7       Defendant only uses the KIVA mark in connection with its cannabis-infused

8  edibles.  <u>See</u> Amended Counterclaim, at paragraph 5. Kiva Brands has expanded

9  the geographic scope of its sales of Kiva Confections, claiming that it has

10  "launched" the Kiva Confections' cannabis-containing edibles in Arizona (October

11  2015), Nevada (October 2016), Illinois (May 2017), and Hawaii (September 2018).

12  Amended Counterclaim, at paragraph 26.  Kiva Brands has also begun marketing

13  and selling its cannabis-infused edibles in Michigan in late 2018, or early 2019.

14  Henderson Declaration, at paragraph 14; Miller Declaration, at paragraph 7.

15       Defendant has no USPTO registrations for the KIVA mark, but it claims that

16  it obtained state registrations of KIVA in 2018 in California and Illinois, and in

17  2017 in Arizona and Nevada.  <u>See</u> Amended  Counterclaim, at paragraph 27.  On

18  January 11, 2017, Kiva Brands filed a USPTO "intent to use" application (UPSTO

19  Serial No. 87297240), seeking registration of the KIVA mark for "a website

20  featuring health, wellness and nutritional information. . . all in the field of herbal

21  remedies, medical benefits of cannabis, medical cannabis strains … and effects of

22  medicine cannabis."  <u>See</u> Amended Counterclaim, at paragraph 28.  In order to get

23  the application allowed, Kiva Brands represented to the USPTO that Kiva Brands'

24  services comply with the Controlled Substances Act.  <u>See</u> Miller Declaration, at

25  paragraph 4, and Exhibits "H" and "I" thereto.

26  C.    <u>Confusion</u>

27       Plaintiff Kiva Health first became aware of defendant Kiva Brands' use of

28  the KIVA name in 2015.  At the time, Kiva Health believed that defendant only

used the term KIVA next to the term Confections -- i.e., "KIVA Confections."
Additionally, Kiva Health understood and believed that the scope of use of KIVA
Confections was as a source designator for marijuana-containing confections sold
primarily or exclusively in the San Francisco area.  Henderson Declaration, at
paragraph 12.

However, in late 2016 or early 2017, plaintiff Kiva Health noticed multiple
instances of Kiva Brands' use of the KIVA name by itself, without being followed
by "Confections."  Kiva Health has been informed that defendant Kiva Brands now
uses the stand-alone KIVA mark on many of its products being sold throughout the
State of California, and in other states as well.  Id., at paragraph 12, and Exhibit
"D" thereto.

By 2017, Kiva Health became aware that serious consumer confusion was
being caused by defendant Kiva Brands' use of the term KIVA on and in relation
to its cannabis edibles.  The marks being used by the two companies consist of the
identical four letters, and are both used in the sale of food products.  As a result,
actual and prospective customers of plaintiff Kiva Health have inquired as to
whether it is associated with Kiva Confections, or have simply assumed that they
are associated, and some have expressed concern that Kiva Health's food products
and supplements contain cannabis.  Henderson Declaration, at paragraphs 12-13,
and Exhibit "D."

With the growth and success of plaintiff Kiva Health, and the concurrent
expansion of Kiva Confections, the instances of confusion continued to increase.
In January of 2017, plaintiff Kiva Health staff documented instances of confusion
as frequently as several times a week or more.  Henderson Declaration, at
paragraph 13, and Exhibit "E" thereto.

On May 5, 2018, Kiva Health's counsel sent a letter to Kiva Confections,
stating that Kiva Health had become aware of consumer confusion as to the KIVA
mark.  The letter cited Kiva Health's federal trademark registrations, and demanded

1  that Kiva Confections immediately stop using the KIVA mark. Henderson

2  Declaration, Exhibit "F." The parties thereafter exchanged additional

3  correspondence, and have engaged in a structured mediation, but no resolution has

4  been reached.

5        Defendant Kiva Brands has not curtailed its use of the KIVA mark. On the

6  contrary, Kiva Brands appears intent upon continuing to use the KIVA mark in

7  relation to its sales of cannabis containing food products, while expanding its use

8  of the KIVA mark outside of California. Indeed, in September of 2018, some four

9  months after the "cease and desist" letter, Kiva Brands clearly demonstrated its

10  willful disregard of Kiva Health's trademark rights, by expanding sales of its

11  cannabis-infused edibles to Kiva Health's home, the State of Hawaii; and then this

12  year, after the filing of the subject lawsuit, by expanding sales into the State of

13  Michigan.

14  **III.  MOTION FOR PRELIMINARY INJUNCTION**

15  A.  <u>Legal Standard For Preliminary Injunctions</u>

16        In the Ninth Circuit, a party seeking a preliminary injunction must satisfy a

17  four part test, by showing: "that he is likely to succeed on the merits, that he is

18  likely to suffer irreparable harm in the absence of preliminary relief, that the

19  balance of equities tips in his favor, and that an injunction is in the public interest."

20  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 877

21  (9th Cir. 2009), quoting <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555

22  U.S. 7, 129 S. Ct. 365 (2018).

23  B.  <u>Plaintiff Kiva Health Is Likely To Succeed On The Merits</u>

24        To prevail on a claim of trademark infringement, a plaintiff must prove

25  "(1) that it has a protectable ownership interest in the mark; and (2) that the

26  defendant's use of the mark is likely to cause consumer confusion." <u>Network</u>

27  <u>Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1144 (9th Cir.

28  2011); <u>Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.</u>, 448 F.3d 1118,

1124 (9th Cir. 2006).  Facts set forth in this motion establish that plaintiff Kiva
Health will be able to prove both of these elements.

      1.    Plaintiff Is The Owner Of The KIVA Trademark

      Kiva Health's "protectable ownership interest" is established by the
trademark registration certificates issued by the USPTO to Kiva Health for its
KIVA mark.  A federal trademark registration on the Principal Register constitutes
prima facie evidence of (1) the validity of the registered mark; (2) the registration
of the mark; (3) the registrant's ownership of the mark; and (4) the registrant's
exclusive right to use the registered mark on or in connection with the goods or
services specified. 15 U.S. C. § 1057(b);  3 McCarthy on Trademarks and Unfair
Competition, § 19:9 (5th ed. 2018); Rolley, Inc. v. Younghusband, 204 F.2d 209,
211 (9th Cir. 1953).

      Kiva Health holds three USPTO registered trademarks for KIVA, and the
registrations specify that the goods covered by the mark fall within, inter alia,
International Classification No. 30, for "coffee, tea, cocoa … confectionaries."
Class 30 includes chocolate candies and "gummy candies." See USPTO
Trademark ID Manual; Miller Declaration, at paragraph 5, and Exhibit "J" thereto.
Kiva Brands does not own any USPTO registered trademarks for KIVA, but it is
using the KIVA mark to sell food products such as cannabis-infused chocolate
candy and gummy candies.  Miller Declaration, at paragraph 6, Exhibit "K."
Clearly, Kiva Brands and its Kiva Confections have infringed on Kiva Health's
exclusive right to use the registered KIVA mark, in connection with goods of the
type specified in the registrations.

      2.    A Likelihood Of Confusion Has Been Established

      "Infringement of federally registered marks is governed by the test of
whether the defendant's use is 'likely to cause confusion, or to cause mistake, or to
deceive.'" 3 McCarthy on Trademarks, supra § 23:1, citing 15 U.S.C. § 1114(1).
In the Ninth Circuit, the eight factor "Sleekcraft" test is used to determine the

likelihood of confusion between two parties using the same or similar marks in commerce.  See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979). Those factors are:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

Id., at pp. 348-349.  While a few of these factors may be neutral or uncertain, the important factors all weigh heavily in support of a finding that Kiva Brands' use of the KIVA mark is "likely to cause confusion."

The "critical" factor is "similarity of the marks."  Marketquest Grp., Inc. v. BIC Corp., 316 F.Supp.3d 1234, 1270 (S.D.Cal. 2018); One Indus., LLC v. Jim O'Neal Distrib., 578 F.3d 1154, 1162 (9th Cir. 2009); Nova Wines, Inc. v. Adler Fels Winery, LLC, 467 F.Supp.2d 965, 979 (N.D.Cal. 2006).  In the instant case, *the marks are identical*.  The trademark registered by Kiva Health is simply the four-letter name, "KIVA," and "consists of standard characters, without claim to any particular font, style, size, or color."  The infringing mark used by Kiva Confections is indistinguishable, as it also consists only of the same four-letter name, "KIVA."

The "proximity of the goods" factor is also considered "particularly probative."  Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 432 (9th Cir. 2017).  This factor looks to the similarity or relatedness of the goods, and is often weighted in inverse proportion to the "similarity of the marks."  That is, "the greater the similarity in the marks, the lesser the similarity required in the goods or services of the parties to support a finding of likely confusion." 3 McCarthy on Trademarks, supra, § 23:20:50.  Here, the fact that the "KIVA" marks are identical allows a lesser degree of similarity of the goods to suffice, but

1   that dispensation is unnecessary, because the proximity of the goods is established
2   by the fact that they are in the same USPTO goods classification.  In particular,
3   plaintiff holds federal trademark registrations for the KIVA mark for International
4   Classification No. 30, which includes candy, chocolate powder, honey, syrups,
5   natural sweeteners, and sweets.  See Henderson Declaration, Exhibits "A," "B,"
6   and "C"; Miller Declaration, at paragraph 5.  As conceded by defendant Kiva
7   Brands, cannabis containing chocolate confections, if eligible for federal
8   registration, would also be in Class No. 30.  See Kiva Brands' Amended
9   Counterclaim, at paragraph 27.  There is simply no question that the parties'
10  products are in fact closely related.

11        The "marketing channels used" for Kiva Health and Kiva Confections are
12  similar; both companies have promoted and marketed their products over the
13  internet.  See Complaint, at paragraphs 7, 13; Amended Counterclaim, at
14  paragraphs 24, 28; Henderson Declaration, at paragraphs 8, 10; Miller Declaration,
15  at paragraph 6.  There is also a significant "likelihood of expansion of the product
16  lines," which will result in additional and continuing consumer confusion.  Plaintiff
17  Kiva Health continues to promote its KIVA-brand products, while defendant Kiva
18  Brands has begun to market its cannabis-infused products in other states.  See
19  Complaint, at paragraphs 9, 10; Amended Counterclaim, at paragraph 26.

20        Finally, plaintiff has proffered evidence showing "actual confusion" between
21  its products and defendants' products.  Beginning in late 2016 or early 2017, and
22  continuing to date, Kiva Health has received an increasing number of complaints
23  and questions indicating that consumers were confusing Kiva Health's KIVA brand
24  with Kiva Confections.  See Henderson Declaration, at paragraph 13, and Exhibit
25  "D" thereto.  "Evidence of actual confusion constitutes persuasive proof that future
26  confusion is likely … [i]f enough people have been actually confused, then a
27  likelihood that people are confused is established."  Thane Intern., Inc. v. Trek
28  Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002)); Rearden LLC v. Rearden

1  Commerce, Inc., 683 F.3d 1190, 1210 (9th Cir. 2012).

2      The three remaining Sleekcraft factors are either neutral (e.g., Kiva Health

3  believes that the KIVA mark is "strong," and is not descriptive or generic, but Kiva

4  Brands would probably agree), or will require additional investigation and

5  discovery (e.g., determining what Kiva Brands' intent was in adopting the KIVA

6  mark).  However, the above-discussed Sleekcraft factors clearly establish the

7  existence of a likelihood of consumer confusion.  Simply put, the parties'

8  respective KIVA marks are incapable of co-existing in the marketplace as

9  designators of source or origin of the parties' respective goods, and Kiva Health

10  has established a substantial probability that it will prevail on its claim that the

11  Kiva Confections' mark infringes upon Kiva Health's trademarks.

12      3.      Defendant Will Not Prevail On Its Expected Affirmative Defenses

13      Kiva Brands' principal affirmative defenses are believed to be: (1) the claim

14  that it is a "senior user" of the mark; and (2) laches.  See Answer, Third  and

15  Fourth Affirmative Defense,  at pp. 5 and 10.  Kiva Brands is unlikely to prevail on

16  either of these defenses.

17      (a)  Defendant Cannot Successfully Raise a "Senior User" Defense

18      Kiva Health is entitled to nationwide priority of rights for its KIVA brand,

19  for food and food related products, from September 5, 2013.  On that date, Kiva

20  Health filed its USPTO Application Serial No. 86-057,197 (which eventually

21  ripened into USPTO Registration No. 4,514,257), for the use of the KIVA mark in

22  conjunction with products in, among others, Classification No. 30 -- candy,

23  chocolate powder, honey, syrups, natural sweeteners, and sweets. "[T]he filing of

24  the application to register [a] mark shall constitute constructive use of the mark,

25  *conferring a right of priority, nationwide in effect, on or in connection with the*

26  *goods or services specified in the registration...*" 15 USC § 1057(c) (emphasis

27  added).

28  //

1    Section 1057(c)(1) recognizes an exception to the "right of priority" given to

2    the applicant, which applies if someone else, "whose mark has not been abandoned

3    ... had used the mark" before the application's filing.  Documents filed with the

4    California Secretary of State establish that defendant Kiva Brands was not

5    incorporated, and did come into existence, until September 5, 2014 -- a year *after*

6    Kiva Health filed its application for the KIVA mark.  See Miller Declaration,

7    Exhibit "G."  Nonetheless, Kiva Brands claims that it acquired senior user rights,

8    based upon the alleged prior use of the KIVA mark by its founders and a claimed

9    predecessor entity, Indica.  Amended Counterclaim, paragraph 23, and note 1, at

10   pp. 12-13.

11   Since Kiva Brands came into existence in 2014, it could not have been using

12   the KIVA mark in 2013, when Kiva Health's application was filed.  Consequently,

13   to establish a senior user defense, Kiva Brands must demonstrate that its purported

14   predecessor, Indica, accrued trademark rights in KIVA sometime before Kiva

15   Health's application was filed in September of 2013, and must establish that there

16   is a non-defective chain of title pursuant to which such rights flow through to Kiva

17   Brands.

18   "The purpose of a trademark. . . is to identify a good or service to the

19   consumer, and identity implies consistency and a correlative duty to make sure that

20   the good or service really is of consistent quality, i.e., really is the same good or

21   service." Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc., 448 F.3d 1118, 1131

22   (9th Cir. 2006), quoting  Gorenstein Enters., Inc. v. Quality Care-USA, Inc., 874

23   F.2d 431, 435 (7th Cir. 1989).  In light of that purpose, trademark rights cannot be

24   "transferred apart from the business with which the mark has been associated."

25   Glow Indus. v. Lopez, 273 F. Supp. 2d 1095, 1107 (C.D.Cal. 2003).  A trademark

26   is "assignable [only] with the good will of the business in which the mark is used,

27   or with that part of the good will of the business connected with the use of and

28   symbolized by the mark." Id., at p. 1107, citing 15 U.S.C. § 1060.  Accordingly,

the Courts are "cautious in scenarios that do not involve clear written documents of assignment ... [r]equiring strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ." Dep't of Parks & Rec., supra, 448 F.3d at p. 1131, quoting TMT North America, Inc. v. Magic Touch GmbH, 124 F.3d 876, 884 (7th Cir. 1997), and Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 822 (3d Cir. 2006).

In sum, absent persuasive evidence demonstrating an unbroken, and non-defective, chain of title of trademark rights that predate Kiva Health's September 2013 filing, defendant Kiva Brands cannot be deemed a senior user. 4 McCarthy on Trademarks, supra § 26:5. Kiva Brands' principal evidence on this issue is the license to use the KIVA mark supposedly given to its predecessor, Indica, on November 23, 2010. However, "founder" Scott Palmer has now admitted that his sworn testimony that the license was executed in 2010 was incorrect, and that the license was backdated -- "[t]he agreement was signed in or around October 2018, effective November 23, 2010." See Miller Declaration, paragraph 8, and Exhibit "L" thereto.

In any event, even if Kiva Brands was able to show assignments, or some other legitimate chain of title, from its "founders" to Indica, and from Indica to Kiva Brands, it still would not be able to successfully assert a senior user defense, because it is using the mark to identify a product that is illegal to sell under federal law. To obtain registration of a trademark, an applicant must show that the mark "is in use in commerce" (15 U.S.C. § 1051(a)(3)(C)), or that applicant has a "bona fide intention to use the mark in commerce" (15 U.S.C. § 1051(b)(3)(B). Senior user rights accrued at common law are likewise predicated on the first "use in commerce." Dep't of Parks & Rec., supra, 448 F.3d at pp. 1125 (must show "that it actually adopted and used the marks in commerce prior to [the other party's]

registration"). "[P]riority ordinarily comes with the earlier use in commerce."
2 McCarthy on Trademarks, supra § 16:1 quoting Grupo Gigante SA De CV v.
Dallo & Co., Inc., 391 F.3d 1088, 1093 (9th Cir. 2004).

However, the USPTO and the federal courts have repeatedly held that the
"use in commerce" must be a **lawful use**. "[O]nly lawful use in commerce can
give rise to trademark priority." S. California Darts Ass'n v. Zaffina, 762 F.3d 921,
931 (9th Cir. 2014), quoting CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d
626, 634 (9th Cir. 2007) (to obtain priority over registered trademark, the first use
of a mark must be lawful); In Re Morgan Brown, 119 U.S.P.Q.2d 1350 (T.T.A.B.
July 14, 2016) ("the use of a mark in commerce must be lawful"). It therefore
follows that "any goods for which a mark is used must not be illegal under federal
law." In Re JJ206, LLC, DBA Juju Joints, 120 U.S.P.Q.2d 1568, 1569 (T.T.A.B.
Oct. 27, 2016). The requirement of a "lawful use" is also applicable to senior user
claims. CreAgri, supra, 474 F.3d at p. 634 (to obtain priority over registered
trademark, the first use of a mark must be lawful); GoClear LLC v. Target
Corporation, 2009 WL 160624 (USDC N.D. Cal. 2009) ("the 'lawful use'
requirement is applicable to a claim for cancellation of a registered mark," based
on previous use of a similar mark).

The Kiva Confections and Indica products on which the KIVA mark is used
"are all infused with cannabis." See Amended Counterclaim, paragraph 5.
"[M]arijuana remains illegal for all purposes under federal law." See Trademark
Laundering, Useless Patents, and Other IP Challenges for the Marijuana Industry,
73 Wash & Lee L. Rev. 217, 219 (Winter, 2016); Trademark Manual of Examining
Procedure, § 907 (2018) (the Controlled Substances Act (CSA) makes it "unlawful
to manufacture, distribute, or dispense a controlled substance [or] possess a
Schedule I controlled substance...regardless of state law, marijuana [and]
marijuana extracts...remain Schedule I controlled substances under federal law and
are subject to the CSA's prohibitions"); 21 U.S.C. §§ 812(c)(10).

1    Defendant Kiva Brands is seeking a determination that it has the exclusive

2    right to use the KIVA mark, and is seeking cancellation of Kiva Health's registered

3    KIVA trademarks, based on Kiva Brands' alleged first use of the KIVA mark.

4    However, Kiva Brands has conceded that the mark is and was used by it solely to

5    market its marijuana infused products.  Marketing of marijuana is illegal under

6    federal law.  Consequently, Kiva Brands' alleged prior use of the KIVA mark was

7    not a "lawful use in commerce," and cannot be the basis for Kiva Brands'

8    prosecution or defense of the federal trademark claims here at issue.

9    (b) Kiva Brands Cannot Successfully Raise a Laches Defense

10    Plaintiff Kiva Health first became aware of Kiva Confections in 2015.  It

11    was not until late 2016 or early 2017, however, that Kiva Health began

12    experiencing significant instances of consumer confusion.  It was also during this

13    same time frame that Kiva Health first became aware that Kiva Confections was

14    using the KIVA mark without attaching "Confections."  Henderson Declaration, at

15    paragraph 12.  This may be because Kiva Brands had refrained from advertising its

16    product, due to its status as a controlled substance, or because the Kiva

17    Confections website ("www.kivaconfections.com") until recently continued to

18    exhibit the Confections suffix on some or all of its uses of the term KIVA.

19        Laches is measured from the date when there was an
20        infringing use sufficient to require legal protest and
    possible lawsuit.  In most cases, this requires legal action
21        only when defendant's infringing acts significantly impact
    on plaintiff's good will and business reputation.
22

23    5 McCarthy on Trademarks, supra § 31:19.

24    Kiva Health was unaware of Kiva Confections before 2015, and was not

25    aware of its infringing use of KIVA until late 2016 or early 2017.  On May 5,

26    2018, Kiva Health's attorney sent a cease and desist letter to defendant, and on

27    September 26, 2018, Kiva Health filed its complaint.  This timeline fails to support

28    a laches defense.

1     A trademark infringement claim filed within the analogous state limitations

2  period creates a strong presumption against the imposition of a laches defense.

3  "Only rarely should laches bar a case before the analogous statute has run." Tandy

4  Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 366 (6th Cir. 1985); 5 McCarthy on

5  Trademarks, supra § 31:1.  In California, the analogous state statute of limitations

6  period is the four-year limitations period for trademark infringement actions.

7  Pinkette Clothing, Inc. v. Cosmetic Warriors Limited, 894 F.3d 1015, 1025 (9th

8  Cir. 2018), citing Internet Specialties W., Inc. v. Milon-DiGiorgio Enters, Inc.,

9  559 F.3d 985, 990 n.2 (9th Cir. 2009).  Kiva Health's "delay" in bringing the

10  instant action, measured from when it "knew or should have known about its

11  potential cause of action" (Pinkette, supra, 894 F.3d at p. 1025), is less than half

12  the applicable statute of limitations period.  This alone creates a very strong

13  presumption against the imposition of the laches defense.

14     "Laches typically does not bar prospective injunctive relief." Pinkette,

15  supra, 894 F.3d at p. 1027.  Moreover, when there is a strong case of likely

16  confusion, "estoppel by laches is not a defense."   5 McCarthy on Trademarks,

17  supra § 31:6.  "In weighing the effect of plaintiff's delay in suing, a court must

18  consider the right of the public in being protected against the continuing use of

19  clearly confusing marks..." Id., at § 31:10, quoting SunAmerica Corp. vs. Sun Life

20  Assurance Co. of Can., 77 F.3d 1225 (11th Cir. 1996).  Here, there is a real danger

21  that Kiva Confections' use of an identical KIVA mark on its cannabis infused

22  chocolate will lead to consumer confusion.  Kiva Brands therefore cannot prevail

23  on its laches defense.

24  C.    Kiva Health Has Suffered, And Will Continue To Suffer, Irreparable Harm

25     The Ninth Circuit no longer allows irreparable injury to be presumed in

26  trademark infringement cases.  Herb Reed Enterprises, LLC v. Florida

27  Entertainment Management, Inc., 736 F.3d 1239, 1250 (9th Cir. 2013).  However,

28  "the vast majority of Ninth Circuit District Courts have found irreparable injury

from the likelihood of injury to the good will and reputation of the trademark owner." 5 McCarthy on Trademarks, supra § 30:47:50, and note 13.

> Even though defendant may have the resources to be able to pay damages after a trial, the difficulties of proof of compensatory damages where a good name and reputation are at risk can usually mean that 'irreparable damage' is accruing. ...The damage caused by probable confusion and deception occurs in the minds of the public and cannot be made whole by a money judgment paid years later. ...
> Where there is, then, such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows.

Id., at § 30:47:50.

The documented confusion in this case has burdened plaintiff Kiva Health and its staff, and has caused damage to Kiva Health's reputation for eco friendly, unadulterated, healthy foods products, with resultant harm to Kiva Health's sales. See e.g. Lorillard Tobacco co. v. California Imports, LLC, 886 F.Supp.2d 529 (E.D. Va. 2012)(use of plaintiff's tobacco mark on a "spice" smoking product containing synthetic marijuana constituted dilution by tarnishment). Clearly Kiva Health has lost "some measure of control over its business reputation" in view of the evidence of consumer confusion. Kiva Confections' recent expansion of the KIVA brand to cannabis infused confections sold within the State of Hawaii, together with its continuing expansion eastward to Michigan and presumably beyond, will only increase the burden, damage and tarnishment to plaintiff and its brand.

D.    A Balancing Of Equities Tips Sharply in Plaintiff's Favor

If Kiva Confections is permitted to continue to use the KIVA mark on or in conjunction with marijuana infused edibles, Kiva Health will continue to experience increasing consumer confusion and damage to its goodwill, and to its reputation as a provider of healthy and unadulterated food products. On the other

1    hand, if defendant Kiva Brands is enjoined as requested, it will only be

2    inconvenienced by having to undertake the effort and expense to re-brand. Re-

3    branding will not cause harm or injury to Kiva Confections' reputation.

4         The only impact that re-branding will have on Kiva Confections' goodwill

5    would be transitory, and the result of its own actions. Kiva Brands was on

6    constructive notice of Kiva Health's claim to the KIVA brand since September 5,

7    2013, when Kiva Health filed the application resulting in USPTO Registration no

8    4,514,257. Kiva Brands was on actual notice since at least August 2017, when

9    Kiva Brands admits it learned of the existence of Kiva Health and Kiva Health's

10   claim to the KIVA mark, from Kiva Brands' trademark attorney in the context of

11   its own application to register the KIVA brand with the USPTO. Miller

12   Declaration, at paragraph 7. Rather than making arrangements to re-brand, Kiva

13   Brands denied any and all wrongdoing, and continued to expand the use of the

14   KIVA mark. "[T]he injury a defendant might suffer if preliminarily enjoined 'may

15   be discounted by the fact that the defendant brought that injury upon itself.'" 5

16   McCarthy on Trademarks, supra § 30:51, quoting Novartis Consumer Health, Inc.

17   v. Johnson & Johnson-Merk Consumer Pharmaceuticals Co., 290 F.3d 578 (3rd

18   Cir. 2002).

19   E.   An Injunction Against Kiva Confections' Use Of The KIVA Mark Is In The
         Public Interest

20

21              If the equities are closely balanced, the right of the
                public not to be deceived or confused can turn the scales
22              in favor of a preliminary injunction....Once a likelihood
                of confusion is shown, it follows that the public interest
23              is damaged if such confusion continues.

24

25   5 McCarthy on Trademarks, supra § 30:52, citing Weinberger v. Romero-Barcelo,

26   456 U.S. 305, 312, 102 S.Ct. 1798 (1982).

27        Here, the public interest served by the granting of the injunction is not

28   simply the protection of the public from confusion regarding two sources of edible

1  food products.  An injunction will also serve the public interest by protecting the

2  public from purchasing and using marijuana infused food products, when they

3  intended to purchase and use GMO free, pure, healthy food products sourced from

4  eco-friendly farmers.  This is a public interest that goes well beyond the interest

5  protected by an injunction in a typical trademark infringement case.

6  F.     Conclusion

7      Plaintiff Kiva Health respectfully submits that it has demonstrated:(1) a

8  strong likelihood that it will prevail on its infringement claims; (2) irreparable

9  injury, including the tarnishment of Kiva Health's reputation and goodwill as a

10  result of confusion as to association with cannabis infused food products;

11  (3) defendant Kiva Brands' exacerbation of the confusion and injury by expanding,

12  and continuing to expand, its use of the KIVA mark after being placed upon notice;

13  (4) that the equities balance in Kiva Health's favor; and (5) a need to protect the

14  public interest from confusion between plaintiff's pure unadulterated food

15  products, and defendant's food products adulterated with substances that are illegal

16  under federal law.  Enjoining Kiva Brands from any further use of the KIVA mark

17  is clearly supported by the record.

18  **IV.    MOTION TO DISMISS SECOND AND THIRD CLAIMS FOR**
19  **RELIEF IN THE FIRST AMENDED COUNTERCLAIM**

20  A.    Introduction

21      In response to plaintiff Kiva Health's complaint, defendant Kiva Brands filed

22  an answer which also asserted counterclaims.  On March 11, 2019, Kiva Brands

23  filed its first amended counterclaim.

24      The second and third claims for relief alleged in the amended counterclaim

25  are both based on the contention that Kiva Confections' use of the KIVA mark

26  predated Kiva Health's application to the USPTO for registration of the KIVA

27  mark.  Because of its purported status as the first user of the mark, the second and

28  third claims for relief in Kiva Brands' amended counterclaim allege: (1) that Kiva

Health's registered trademarks should be cancelled; and (2) that it is entitled to remedial relief under the Lanham Act for Kiva Health's purported infringement on Kiva Brands' unregistered marks.

For Kiva Brands to prevail on either of these two claims for relief, it must establish that its common law mark was acquired through its lawful first use, thereby preempting Kiva Health's registered trademark. Kiva Brands will not be able to satisfy this requirement, because its use of the KIVA mark was exclusively for its sales and promotion of marijuana-infused food products. Marijuana is a controlled substance, and its sale or distribution is illegal under federal law, meaning that as a matter of law, Kiva Brands <u>cannot</u> establish that it had made lawful first use in commerce of the KIVA mark.

B.    Legal Standards Applicable To A Motion To Dismiss

A motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6), "allows a party to move for dismissal of one or more claims." <u>Marcus v. ABC Signature Studios, Inc.</u>, 279 F.Supp.3d 1056, 1061 (C.D.Cal. 2017); <u>United Safeguard Distribs. Ass'n v. Safeguard Bus. Sys.</u>, 145 F.Supp.3d 932, 942 (C.D.Cal. 2015). The motion is properly granted when the complaint, or one or more of the claims therein, fails to state a claim for which relief can be granted. <u>Fed</u>. <u>R</u>. <u>Civ</u>. <u>P</u>., Rule 12(b)(6). In ruling on a motion to dismiss, the Court must assume all factual allegations to be true, and construe them in a light favorable to the non-moving party. However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. <u>In re Silicon Graphics, Inc. Securities Litigation</u>, 970 F.Supp. 746, 751 (N.D. Cal. 1997). Further, the Court need not accept as true allegations that contradict facts that have been judicially noticed. <u>Id</u>.; <u>see also Employers Insurance v. Musick, Peeler & Garrett</u>, 871 F.Supp. 381, 385 (S.D. Cal. 1994).

//

//

C.     Argument

As noted in the discussion of plaintiff's motion for a preliminary injunction, registration of a trademark requires a showing that the mark has been, or will be, "in use in commerce." 15 U.S.C. § 1051(a)(3)(C) and (b)(3)(B). Senior user rights accrued at common law for unregistered marks are likewise predicated on the first "use in commerce." Dep't of Parks & Rec., supra, 448 F.3d at pp. 1125. "[P]riority ordinarily comes with the earlier use in commerce." 2 McCarthy on Trademarks, supra § 16:1, quoting Grupo Gigante SA De CV v. Dallo & Co., Inc., 391 F.3d 1088, 1093 (9th Cir. 2004).

The USPTO and the federal courts have repeatedly held that a mark's "use in commerce" must be a **lawful use**. "[O]nly lawful use in commerce can give rise to trademark priority." S. California Darts Ass'n v. Zaffina, 762 F.3d 921, 931 (9th Cir. 2014), quoting CreAgri, Inc. v. USANA Health Scis., Inc., 474 F.3d 626, 634 (9th Cir. 2007). It therefore follows that "any goods for which a mark is used must not be illegal under federal law." In Re JJ206, LLC, DBA Juju Joints, 120 U.S.P.Q.2d 1568, 1569 (T.T.A.B. Oct. 27, 2016). "[T]he goods or services to which the mark is applied, and the mark itself, must comply with all applicable federal laws." In re Pepcom Indus., Inc., 192 USPQ 400, 401 (TTAB 1976); Trademark Manual of Examining Procedure, § 907 (2018).

The requirement of a "lawful use" of the mark has also been held applicable to common law senior user claims. CreAgri, supra, 474 F.3d at p. 634; GoClear LLC v. Target Corporation, 2009 WL 160624 (USDC N.D. Cal. 2009) ("the 'lawful use' requirement is applicable to a claim for cancellation of a registered mark," based on previous use of a similar mark).

The products of Kiva Confections (and the alleged Indica products) on which the KIVA mark is used "are all infused with cannabis." See Amended Counterclaim, paragraph 5. "[M]arijuana remains illegal for all purposes under federal law." See Trademark Laundering, Useless Patents, and Other IP Challenges

1   for the Marijuana Industry, 73 Wash & Lee L. Rev. 217, 219 (Winter, 2016);

2   Trademark Manual of Examining Procedure, supra, § 907; 21 U.S.C. §§

3   812(c)(10).

4        In its second and third claims for relief, Kiva Brands is seeking a

5   determination that its "first use" gives it the exclusive right to use the KIVA mark,

6   and requires cancellation of Kiva Health's registered trademarks.  However, Kiva

7   Brands has conceded that the mark was used by it solely to market its marijuana

8   infused products.  Amended Counterclaim, paragraph 5.  Marketing of marijuana is

9   illegal under federal law.  Consequently, Kiva Brands' alleged prior use of the

10  KIVA mark was not a "lawful use in commerce," and ***cannot be the basis for Kiva***

11  ***Brands' prosecution or defense of the federal trademark claims here at issue.***

12        "Currently the USPTO rejects trademark applications for registration from

13  growers, producers, and sellers of marijuana on the basis of this illegality

14  doctrine."  Laundering, Useless Patents, and Other IP Challenges for the Marijuana

15  Industry, supra, 73 Wash & Lee L. Rev. at p. 244;  see also In Re JJ206, LLC,

16  DBA Juju Joints, 120 U.S.P.Q.2d 1568, 1569-1570 (T.T.A.B. Oct. 27, 2016)

17  (registration denied because mark was used in marketing illegal marijuana related

18  paraphernalia); In re JJ206, LLC, 2016 TTAB LEXIS 527 (T.T.A.B. 2016) (rejects

19  claim that state laws made marijuana use lawful, noting that "the federal CSA is

20  conclusive on the lawfulness issue for registrability purposes"); In re Morgan

21  Brown, 119 U.S.P.Q.2d 1350, 1351 (T.T.A.B. 2016) (the fact that marijuana may

22  be legal in a state "is irrelevant to the question of federal registration when it is

23  unlawful under federal law"); In re PharmaCann LLC, 123 U.S.P.Q.2d 1122, 1128

24  (T.T.A.B. 2017) (applicant that sells and distributes marijuana "cannot use its mark

25  in lawful commerce, and it is a legal impossibility for [it] to have the requisite

26  bona fide intent to use the mark").

27        In sum, the amended counterclaim's second and third claims for relief are

28  seeking a determination that Kiva Brands has the exclusive right to use the KIVA

mark, based on its alleged first use.  However, Kiva Brands admits that it used the

mark solely for the marketing of marijuana-infused products, in violation of federal

law.  Kiva Brands' alleged prior use of the KIVA mark was therefore not a "lawful

use in commerce," and as a matter of law cannot support the claims raised by Kiva

Brands in its second and third claims for relief.

D.   Conclusion

    The second and third claims for relief in Kiva Brands' amended

counterclaim seek protection under the Lanham Act for a mark used by defendant

in its sales and promotion of marijuana-infused chocolates.  Because Kiva Brands

cannot show a "lawful use in commerce" of its mark, it cannot prevail on any claim

under federal trademark law, and its second and third claims should therefore be

dismissed pursuant to Rule 12(b)(6).


DATED:  May 3 , 2019.

                    Respectfully Submitted,

                    MILLER JOHNSON LAW


                    Jon B Mili

                    JON B. MILLER
                    Attorneys for Plaintiff
                    KIVA HEALTH BRANDS LLC