1 | BRETT SCHUMAN (SBN 189247)
bschuman@goodwinlaw.com
2 | JEREMY LATEINER (SBN 238472)
jlateiner@goodwinlaw.com
3 | NICHOLAS COSTANZA (SBN 306749)
ncostanza@goodwinlaw.com
4 | **GOODWIN PROCTER LLP**
Three Embarcadero Center
5 | San Francisco, California 94111
Tel.: +1 415 733 6000
6 | Fax.: +1 415 677 9041

7 | Attorneys for Defendant and Counterclaimant
KIVA BRANDS INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

# SAN DIEGO DIVISION

| | |
|---|---|
| KIVA HEALTH BRANDS LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>KIVA BRANDS INC.; and DOES 1 through 20, inclusive,<br><br>   Defendant.<br><br>KIVA BRANDS INC.,<br><br>   Counterclaimant,<br><br>   v.<br><br>KIVA HEALTH BRANDS LLC,<br><br>   Counter-Defendant. | Case No. 3:18-cv-02249-BAS-MDD<br><br>**KIVA BRANDS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   June 24, 2019<br>Judge:  Hon. Cynthia Bashant<br>Courtroom:  4-B<br><br>Filed/Lodged Concurrently with:<br>1. Opposition to KHB's Motions<br>2. Notice of Cross-Motion<br>3. Declaration of Adam Grablick<br>4. Declaration of Scott Palmer<br>5. Declaration of Brett Schuman<br>6. Proposed Order<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT.** |

## I.     INTRODUCTION

For the reasons set forth in Defendant and Counter-Claimant Kiva Brands Inc.'s ("KBI") concurrently filed Opposition to Plaintiff and Counter-Defendant Kiva Health Brands LLC's ("KHB") Motion for Preliminary Injunction (the "Opposition"), KHB's motion should be denied. If, however, the Court grants KHB's motion, that injunction cannot enjoin KBI from using the KIVA or KIVA CONFECTIONS marks (the "KBI Marks") in California. It is undisputed that KBI began using the KIVA mark in commerce throughout California years <u>before</u> KHB. Regardless of how cannabis is treated under federal law, KBI's products have always been legal in California and therefore KBI has senior statutory and common law rights to use the KIVA mark here. Accordingly, KHB should be preliminarily enjoined from using the KIVA mark within California.

## II.    STATEMENT OF FACTS

A full discussion of the relevant facts is set forth in the Opposition, and will not be repeated here.

## III.   ARGUMENT

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). "Under *Winter,* plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits;  (2) they are likely to suffer irreparable harm in the absence of preliminary relief;  (3) the balance of equities tips in their favor;  and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citation omitted). The moving party "bears the heavy burden of making a 'clear showing' that it [i]s entitled to a preliminary injunction." *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1312 (9th Cir. 2015).

///

///

### 1. If KHB Has Established A Likelihood of Irreparable Harm, So Has KBI.

To obtain a preliminary injunction, the moving party must establish that irreparable harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 21–22 (italics in original). In its brief, KHB claims that irreparable harm is likely despite the fact that it filed its preliminary injunction motion almost ***four years*** after it first learned of KBI's use of the KIVA mark and approximately ***two-and-a-half years*** after it claims it was aware of purported customer confusion. *See* Opposition, Section III(A)(1); Dkt. No. 22-1 at 4:27-28; Declaration of Brett Schuman ("Schuman Decl."), Exs. 1 at 7:5-11, and 2 at 71:3-73:2. If the Court agrees that a likelihood of irreparable harm exists despite this delay, then KBI's cross-motion is not untimely, either. Indeed, KBI's delay in seeking provisional relief is substantially less than KHB's. KHB admits it knew about KBI as long ago as June 2015, when it consulted with its litigation counsel about KBI. Schuman Decl., Ex. 1 at 7:5-11. KBI, by contrast, first learned of KHB years later, in August 2017. Declaration of Scott Palmer ("Palmer Decl."), at ¶ 21.

### 2. If KHB Has Established A Likelihood of Success On The Merits, So Has KBI.

KBI has asserted counterclaims against KHB for, among other things, trademark infringement under California statutory and common law based on its senior use of the KIVA mark in California. Dkt. No. 10 at 16-20. To prove trademark infringement under California law (either statutory or common law), the plaintiff must show (1) its prior use of the trademark and (2) the likelihood of the infringing mark being confused with their mark. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 948 (N.D. Cal. 2005); *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 433 (1997). As shown below, if the Court finds that a likelihood of confusion exists, then KBI is likely to succeed on its California trademark infringement claims against KHB. *See Mallard Creek Indus., Inc.*, 56 Cal. App. 4th

2

at 435 (noting that "the federal 'likelihood of confusion' standard applies equally to claims under California law").

KBI has a protectable ownership interest in the KIVA mark under California law. With respect to its statutory infringement claim, "[r]egistration of a trademark is prima facie evidence of ownership." *Don Alvarado Co. v. Porganan*, 203 Cal. App. 2d 377, 382 (1962). KBI is the owner of a registered California trademark (Cal. Reg. No. 300245) for KIVA in connection with "[c]hocolate and confections, all of the foregoing containing cannabis." Palmer Decl., at ¶ 20, Ex. H. With respect to its common law infringement claim, "[u]nder…California common law…, whosoever first adopts and uses a trade name, either within or without the state, is its original owner." *Am. Petrofina, Inc. v. Petrofina of California, Inc.*, 596 F.2d 896, 897 (9th Cir. 1979); *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1040 (N.D. Cal. 2015).

Notwithstanding KBI's senior rights to the KIVA mark in California, KHB argues that KBI cannot establish prior use of the KIVA mark because (1) KBI allegedly lacks a chain of title to the KIVA mark in light of a backdated license agreement between its founders and Indica, and (2) the KBI Products are illegal under federal law. Dkt. No. 22-1 at pp. 10-14. Both of these challenges to KBI's seniority should be rejected.

### a. KBI Has Good And Continuous Title To Use The KIVA Mark In California Going Back To November 2010.

Trademark rights may be assigned so long as the goodwill associated with the mark is assigned with it. *See Iskenderian v. Iskenderian*, 144 Cal. App. 4th 1162, 1172 (2006); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) ("It is not necessary that the entire business or its tangible assets be transferred; it is the goodwill of the business that must accompany the mark."). Thus, rights in the KIVA Marks can be assigned to KBI even though it was incorporated *after* KHB's constructive use date of September 15, 2013. *See, e.g*

3

*Mike Sarieddine v. Alien Visions E-Juice, Inc.,* et al., No. CV 18-3658 PA (MAAX), 2019 WL 1966661, at *6 (C.D. Cal. Apr. 12, 2019) (trademark rights from 2009 acquired by entity formed in 2013 despite plaintiff's contention "that Defendant cannot establish continuous use from 2009 because it was not formed until June 2013").

While KHB notes that a license agreement between KBI and Indica relating to the KIVA mark was backdated, it does ***not*** argue that the backdated agreement is invalid.[1] Dkt. No. 22-1 at 12:12-18. It is not. Under California law, "a party of a contract may retroactively adopt prior acts or fix retroactive dates of execution for a contract." *Du Frene v. Kaiser Steel Corp.*, 231 Cal. App. 2d 452, 458 (1964); *see also Hotel Corp. of Am. v. Inn Am., Inc.*, 153 U.S.P.Q. 574, 578 (T.T.A.B. 1967) (backdated trademark licensing agreements executed during litigation were no less "sufficient on their face to meet the essential requirements of a nunc pro tunc assignment"[2] given that "stockholders and officials of the original [applicant] and those of the [subsequent corporate form of the applicant] were for the most part the same and that a number of these same persons … are members of the current corporation.").

KBI's co-founder, Mr. Palmer and his wife Kristi Knoblich, clearly intended to license rights to the KIVA Marks to Indica in November 2010, as they adopted the KIVA Marks in November 2010 and then immediately began manufacturing and

---

[1] KHB also erroneously asserts that Scott Palmer, KBI's CEO, president and co-founder, "admitted that his sworn testimony" about the execution date of the agreement "was incorrect." That is not true. At his deposition, Mr. Palmer merely testified that it "looks like [the agreement] was signed on [November 23, 2010]" based on his review of the document during the deposition – he did not state affirmatively that the document was in fact signed in 2010. Schuman Decl., Ex. 3 ("Palmer Depo."), at 49:7-50:1. Rather, when Mr. Palmer subsequently investigated the issue and remembered that the agreement was actually signed in 2018, he properly clarified his testimony. Dkt. No. 22-4, Ex. L.

[2] A nunc pro tunc assignment is an "an assignment made now of something which was previously done, to have effect as of the former date… [t]he purpose of [which] is to make the record show something which actually occurred, but has been omitted from the record through inadvertence or mistake." *Id.*

selling Kiva-branded cannabis-infused confections through Indica (a corporation they operated and controlled), which is reflected on the face of the Trademark and Know-How Licensing Agreement ("TM License Agreement"). Palmer Decl., at ¶¶ 8-9, 13,15 and Exs. A-B, D.

Further, *even if* the TM License Agreement is invalid (it is not), a license to use a trademark may be implied by the conduct of the parties and "the Supreme Court has long recognized that a license may arise absent a formal granting." *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1129 (9th Cir. 2006) (internal quotations omitted ). The doctrine of implied license may be used "as evidence of its ownership of the marks." *Id.*; *see also TAP Mfg., LLC v. Signs,* No. 215CV00797SVWPJW, 2015 WL 12752874, at *6 (C.D. Cal. July 23, 2015) (trademark use by a licensee "inures to the benefit of the licensor."). To show an implied license, there must be "evidence of an agreement or course of conduct by the parties to contract for a trademark license" and "it is imperative for a licensor to have maintain[ed] control over the quality of the finished product or service to guarantee to the public that the goods or services are of the same, pre-license quality." *Henderson v. Lindland*, No. CV 11-01350 DDP DTBX, 2013 WL 1181957, at *5 (C.D. Cal. Mar. 21, 2013) (citation omitted). As shown above, the conduct of Mr. Palmer and Ms. Knoblich shows an intention to license the KIVA mark to Indica in 2010, and Mr. Palmer and Ms. Knoblich have maintained *full control* over the quality of the KBI Products manufactured, sold, and distributed by Indica and KBI from the first sale by Indica in December 2010, through the formation of KBI in 2014, and through to the present day. Palmer Decl., at ¶¶ 8-10, 12-15 and Exs. A-D.

KBI can also establish acquisition of rights to the KIVA mark dating back to December 2010 under the "related companies" doctrine. Specifically, "the Lanham Act permits an applicant to establish ownership under the 'related companies' doctrine by showing that it controlled the first user of the mark." *Estate of Coll-*

5

1  *Monge v. Inner Peace Movement*, 524 F.3d 1341, 1347 (D.C. Cir. 2008), citing
2  *Secular Orgs. for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1130 (9th Cir. 2000).
3  "The Lanham Act defines a 'related company' as 'any person whose use of a mark
4  is controlled by the owner of the mark with respect to the nature and quality of the
5  goods or services on or in connection with which the mark is used.'" *Id*. at 1348
6  (citing 15 U.S.C. § 1127).  Control over use of a mark may be satisfied by formal
7  corporate control, licensing agreements, and "and other types of oversight."  *Id*.
8  This doctrine also applies to ownership of California common law trademarks.  *See*
9  *Mike Sarieddine*, 2019 WL 1966661, at *6 ("The LaBarres' continuous use of their
10 mark beginning in 2009 through the various corporate changes to their business
11 further supports the asserted transfer of rights" in their common law mark).  Here,
12 Mr. Palmer and Ms. Knoblich "used [the KIVA] mark consistently [from December
13 2010 to 2014] as they transitioned between various corporate forms" until the KIVA
14 mark was ultimately assigned to KBI.  *Id*.; Palmer Decl., at ¶¶ 8-15 and Exs. A-D.
15 Further, and although not required under the related companies doctrine, Mr. Palmer
16 and Ms. Knoblich maintained majority ownership and control over every entity that
17 used the KIVA mark, including KBI, to this day.  Palmer Decl., at ¶ 12.

18     The cases cited by KHB are inapposite.  *Dep't of Parks & Rec. v. Bazaar Del*
19 *Mundo, Inc.*, 448 F.3d 1118, 1131 (9th Cir. 2006), and *TMT North America, Inc. v.*
20 *Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997), involved purported licenses
21 and/or transfers of ownership between opposing parties, not entities owned and/or
22 controlled by the same individuals, as is the case here.  And in *Doeblers' Pa.*
23 *Hybrids, Inc. v. Doebler*, 442 F.3d 812, 815–17, 822 (3d Cir. 2006), the court could
24 not conclude as a matter of law, in a dispute between feuding relatives regarding a
25 family business, that a trademark was assigned 30 years prior based on self-serving
26 deposition testimony that was potentially contradicted by documentary evidence.
27 Here, however, KBI has shown both (1) a clear written document of the license to
28 Indica and subsequent assignment to KBI, ***and*** (2) that Mr. Palmer and Ms.

6

MPA ISO CROSS-MOTION FOR PRELIMINARY INJUNCTION

CASE NO. 3:18-CV-02249-BAS-MDD

Knoblich maintained control over the manufacture, sale, and distribution of products bearing the KIVA mark and intended to license and subsequently assign the KIVA mark. *See* Palmer Decl., ¶¶ 8-13, 15, 18, Exs. B-C. Given this evidence, KHB has not overcome the presumption of KBI's ownership of the KIVA marks in California. *See Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1361 (9th Cir. 1985); Bus. & Prof. Code § 14272.

### b. The Status Of Cannabis Under Federal Law Is Irrelevant For Purposes Of KBI's California State-Law Claims, And This Cross-Motion.

The legality of cannabis under the Controlled Substances Act ("CSA") or any other *federal* law is irrelevant to KBI's statutory and common law rights under *California law* – which is all that matters for purposes of establishing priority in the KIVA mark throughout *California*. KHB's federal trademark registration for the KIVA mark may establish a constructive use date of September 15, 2013, but this right does not trump "valid rights acquired ***under the law of any State***…by use of a mark or trade name continuing from a date prior to the date of registration." 15 U.S.C. § 1065 (emphasis added); *see also Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) ("the geographic scope of…rights in a registered trademark [under 15 U.S.C. § 1057] looks like Swiss cheese: it stretches throughout the United States with holes cut out where others acquired common-law rights prior to the registration.").

California has issued KBI a registered trademark for "Kiva" in connection with "[c]hocolate and confections, all of the foregoing containing cannabis" with a first-use-in-commerce date of December 1, 2010. Palmer Decl., at ¶ 20, Ex. H. Further, KBI has been selling Kiva-branded cannabis-infused confections continuously in the state-legal California cannabis market throughout <u>all of California</u> since at least early 2011– *i.e.*, over two years before KHB's purported

constructive use date of September 15, 2013.[3]  Palmer Decl. ¶ 13, Exs. D-E.  As such, KHB cannot prevent KBI (but KBI can prevent KHB) from using the KIVA mark in California in connection with the KBI Products.  *See, e.g.*, *Headspace Int'l LLC v. Podworks Corp.*, 428 P.3d 1260, 1264 (Wash. Ct. App. 2018) (recognizing a cannabis business' state trademark rights within Washington state because cannabis activity is lawful there).

Finally, the cases relied upon by KBH in support of its "illegality" argument are inapposite.  For instance, the *In Re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. July 14, 2016), and *In Re JJ206, LLC, DBA Juju Joints*, 120 U.S.P.Q.2d 1568, 1569 (T.T.A.B. Oct. 27, 2016), cases involve entities seeking registration of a federal trademark under the Lanham Act in connection with cannabis related goods – KBI has not done this and it is irrelevant to KBI's asserted rights under California law.  Dkt. No. 21-1 at 13:4-18.  The *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 634 (9th Cir. 2007), and *GoClear LLC v. Target Corporation*, 2009 WL 160624 (N.D. Cal. 2009), cases involved prescription drugs and/or dietary supplements that were deemed to be unlawful under federal and state law – i.e., the alleged senior users did not have valid common law rights under state law as KBI does.  *Id.*

### 3. KBI Has Satisfied The Balance Of Equities And Public Interest Requirements.

As explained more fully in KBI's Opposition, the balance of equities tips

---

[3] Mr. Henderson claims in his declaration that an image of the packaging of a yet-to-be released KHB product was posted on a third party's website in October 2010, and that KHB allegedly sold "KIVA-branded bags in 2011."  Dkt. No. 21-2 at ¶¶ 5, 7.  But, in its brief, KHB does not address the relevance of these alleged facts.  And in its brief and trademark applications, KHB states the earliest first use ***in commerce*** by KHB of the KIVA mark on the products at issue was February 15, 2013.  Dkt. Nos. 21-1 at 1:3-7, 21-3 at 2, 4, 6-7.  *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.").

sharply in favor of KBI, who has been using the KIVA mark in California since December 2010 and who has built substantial brand equity using the mark in California and elsewhere over the past eight-and-a-half years. *See* KBI Opposition, at § III(A)(3). And the public interest surely favors granting a preliminary injunction to protect KBI's continuous and legal use of the KIVA mark within California. *Id*. at § III(A)(4).

## IV.  CONCLUSION

Based on the foregoing, if the Court grants KHB's request for a preliminary injunction, over KBI's opposition, then it also should grant KBI's cross-motion for a preliminary injunction enjoining KBH from using the KIVA mark in California.

Dated:  May 20, 2019    By:  s/ Brett Schuman
BRETT SCHUMAN
JEREMY LATEINER
NICHOLAS COSTANZA
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax.: +1 415 677 9041

Attorneys for Defendant and Counterclaimant
KIVA BRANDS INC.